[Cite as *State v. Miller*, 2022-Ohio-213.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                         :
                                      :
        Plaintiff-Appellee            :    Appellate Case No. 29099
                                      :
v.                                    :    Trial Court Case No. 2020-CR-2034
                                      :
JAMES C. MILLER                       :    (Criminal Appeal from
                                      :    Common Pleas Court)
        Defendant-Appellant           :
                                      :

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of January, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant
Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division,
Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DAVID E. STENSON, Atty. Reg. No. 0042671, 131 North Ludlow Street, Suite 316,
Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** James C. Miller appeals from his conviction on charges of murder and felonious assault. The charges involved his stabbing a companion twice in the neck and then hitting the victim with a car.

**{¶ 2}** Miller challenges the trial court's ruling on a motion in limine. He also alleges judicial misconduct, prosecutorial misconduct, and ineffective assistance of counsel. Finally, he contends his convictions were against the weight of the evidence. For the reasons set forth below, we find no merit in Miller's arguments. Accordingly, the trial court's judgment will be affirmed.

## I. Factual and Procedural Background

**{¶ 3}** A grand jury indicted Miller in October 2020 on two counts of murder and three counts of felonious assault. The charges involved Miller's stabbing the victim, Terry Young, twice in the neck and then hitting Young with a car.[1] After the trial court overruled a suppression motion, the case proceeded to a jury trial in March and April 2021.

**{¶ 4}** The State's primary witness was James Griffie. He testified that Miller and Young arrived at his house on July 8, 2020 in an older blue car pulling a trailer. Griffie explained that Miller and Young engaged in "dumpster diving," which involved retrieving and selling items found in dumpsters. The purpose of the visit was to see if Griffie wanted

---

[1] Counts one and two charged Miller with killing Young as a proximate result of committing felonious assault (serious physical harm and deadly weapon). Count three charged felonious assault for knowingly causing serious physical harm. Counts four and five charged felonious assault for knowingly causing or attempting to cause serious physical harm with a deadly weapon (knife and car). Although a jury found Miller guilty on all counts, the trial court merged counts one through four and proceeded with sentencing on count one, which involved the stabbing. The trial court also sentenced Miller on count five, which involved striking the victim with the car.

to buy anything they had found earlier that day.

{¶ 5} Griffie removed a pressure washer from the trailer and examined it. While looking at the pump, he overheard a calm discussion between Miller and Young. The conversation involved Miller's claiming that Young owed Miller some money. As Griffie continued examining the pressure washer, he heard a "gurgling" sound. He looked up and saw Young, who was holding a hand to his neck with a "shocked" expression on his face. Miller then put something in his pocket and drove away in the blue car as Young struggled to walk in an alley toward a road. Griffie observed that Young was bleeding profusely and called 911. He then saw Miller come back around in the blue car. Miller swerved into the grass, "clipped" Young with the car, hit a fence, and fled the scene. Griffie estimated that the car was traveling 20 to 25 miles per hour. He testified that Young went up over the hood a little bit and hit the windshield. By this time, Griffie's half-brother, David Metcalf, had exited the house. Griffie testified that Metcalf held a rag over Young's neck to slow the bleeding. Griffie did not see Young with a knife and did not hear Young threaten Miller during the incident. In his own testimony, Metcalf described Young as being "bloody" and losing consciousness. Metcalf held Young and watched as Young took his last breath. Police located Miller in Virginia in September 2020 and returned him to Ohio the following month.

{¶ 6} An autopsy revealed that Young had a low level of alcohol in his system that was below the legal limit to drive. He also had a low level of methamphetamine in his system that was "within the therapeutic dose" for prescribed medication. Testing further revealed the presence of metabolites of cocaine and marijuana, meaning that these drugs had been in Young's body at some time but no longer were active. The coroner's office

determined that his death had been caused by two stab wounds to the neck.

{¶ 7} Miller testified on his own behalf and claimed self-defense. He stated that Young had gotten angry at him earlier in the day and had shoved him to the ground while dumpster diving. He also testified that he knew Young was carrying a pocketknife, a fact that investigators confirmed after the incident. Miller acknowledged confronting Young about money while at Griffie's house. He claimed Young responded by cursing and threatening to cut him. According to Miller, Young then reached into a pocket. Miller inferred that Young was about to pull out a pocketknife to attack him. Miller testified that Young also stepped toward him, backing Miller against the car. At that point, Miller believed his life was at risk. He responded by pulling his own knife and stabbing Young twice in the neck. Miller admitted that he never saw a knife come out of Young's pocket.

{¶ 8} Miller explained that he returned to the scene after driving away because he thought he had left his knife behind and wanted to find it. He claimed a cigarette ember fell in his lap while he was driving, causing him to look down, swerve from the road, and hit Young. Miller denied seeing Young before hitting him. When asked on cross-examination about investigators' failure to find his knife at the scene, Miller suggested that it may have fallen out of his car somewhere between Dayton and Virginia.

{¶ 9} Based on the evidence presented, the jury found Miller guilty of the charges set forth above. After merging allied offenses, the trial court imposed consecutive prison terms of 15 years to life for murder and four to six years for felonious assault. This appeal followed.

## II. Analysis

{¶ 10} Miller advances the following assignments of error:

I. APPELLANT WAS DENIED A FAIR TRIAL BASED ON THE TRIAL COURT'S RULINGS ON THE ADMISSIBILITY OF EVIDENCE

II. APPELLANT WAS DENIED A FAIR TRIAL BASED ON THE TRIAL COURT'S DISPARAGING COMMENTS REGARDING A JURY INSTRUCTION ON REASONABLE DOUBT

III. APPELLANT WAS DENIED A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO REQUEST A JURY INSTRUCTION ON AGGRAVATED ASSAULT

IV. APPELLANT WAS DENIED A FAIR TRIAL BASED ON PROSECUTORIAL MISCONDUCT

V. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 11} In his first assignment of error, Miller challenges the trial court's ruling on a motion in limine. The issue concerned the admissibility of statements Young allegedly had made to Miller about being a kick boxer, collecting money for the mafia, and having killed someone. In a pretrial ruling from the bench, the trial court appears to have found that Miller could testify about things Young personally had told him insofar as they went to Miller's state of mind. The trial court appears to have excluded testimony more generally going to Young's reputation. (Trial Tr. Vol. II at 290-295.) The trial court made clear, however, that its guidance was tentative. Addressing defense counsel, the trial court stated: "But any time your client intends to—if he gets up here and says anything that he alleges that Mr. Young says, and there's an objection, there won't be an answer until everybody's at sidebar and we discuss it, and I hear the basis for the objection." (*Id.*

at 292.) During his subsequent trial testimony, Miller never attempted to testify about Young's claiming to have been a kick boxer, a money collector for the mafia, or a killer. Thus, the issue addressed in the State's motion in limine never arose at trial.

{¶ 12} On appeal, Miller contends the trial court erred in limiting his presentation of evidence "before the trial ever began." We have recognized, however, that "[t]he granting or denial of a motion in limine does not determine the admissibility of the questioned evidence." *State v. Jones*, 2d Dist. Montgomery No. 28977, 2021-Ohio-3050, ¶ 57.

> * * * Instead, "[a motion in limine] is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible." (Citations omitted.) *State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142 (1986). Hence, "a motion in limine, if granted [or denied], is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *Id*. at 201-202. *Accord State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 751, ¶ 17.

> Because there is no finality, "[a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial." *State v. Leslie*, 14 Ohio App.3d 343, 344, 471 N.E.2d 503 (2d Dist.1984). *See also Grubb* at 202 (the issuance of a motion in limine, by itself, does not preserve the record on appeal except where the "exclusion of the evidence affects a

substantial right and the substance of the excluded evidence is apparent from the context of the questioning by counsel who later seeks to predicate as error the exclusion of the evidence"). It is incumbent on a defendant to seek the introduction of the evidence by proffer to enable the trial court to make a final determination as to its admissibility and preserve an objection for appeal. *Grubb* at 203.

*Id.* at ¶ 57-58.

{¶ 13} At trial, Miller never sought to introduce any evidence about claims Young had made to him or about Young's reputation. The trial court made clear that its final decision ultimately would be guided by the context in which challenged statements arose and the basis of the State's objection. Given the nuanced nature of the trial court's interlocutory liminal ruling and Miller's failure to raise the issue at trial, there is no final evidentiary ruling regarding the admissibility of evidence for us to review. Accordingly, the first assignment of error is overruled.[2]

{¶ 14} In his second assignment of error, Miller contends the trial court made inappropriate disparaging comments regarding a jury instruction on reasonable doubt. In particular, he cites the following remark during preliminary jury instructions:

Reasonable doubt is based on reason and common sense, and not mere possible doubt. Personally, I think that's the worst definition of

---

[2] In its appellate brief, the State proceeds to apply plain-error analysis to the trial court's ruling on the motion in limine. Although we agree that the pretrial ruling would not constitute plain error, we note the absence of a trial evidentiary ruling to which plain-error analysis can apply. The trial court never determined the admissibility of the questioned evidence because Miller never attempted to introduce it at trial. Therefore, there cannot be any error, plain or otherwise.

anything ever; because if you're an English teacher, which I am not, your English teacher always told you, don't use the word in the definition and it does.

But nonetheless I will give you the legal definition of beyond a reasonable doubt at the conclusion of the trial. * * *

(Trial Tr. Vol. II at 143.)

{¶ 15} We are unpersuaded that the trial court's editorial comment about the definition of reasonable doubt deprived Miller of a fair trial. In its subsequent jury instructions, the trial court fully instructed the jury on the meaning of reasonable doubt. (Trial Tr. Vol. IV at 710.) Miller failed to object to the remark quoted above, thereby waiving all but plain error. We see no plain error here. Plain error exists when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. The trial court's personal observation about the definition of reasonable doubt does not constitute plain error. The second assignment of error is overruled.

{¶ 16} In his third assignment of error, Miller alleges ineffective assistance of counsel based on his attorney's failure to seek a jury instruction on aggravated assault. Miller notes that aggravated assault is an inferior-degree offense to felonious assault with an additional mitigating element of "serious provocation." In other words, the two offenses are similar except aggravated assault requires proof that the defendant acted under the influence of sudden passion or in a fit of rage brought about by serious provocation. Miller contends the evidence justified an aggravated-assault instruction and that defense

counsel provided deficient representation by failing to request it.[3]

{¶ 17} We find Miller's argument to be unpersuasive. This court has recognized that a self-defense argument generally is inconsistent with a serious-provocation theory. *State v. Brown*, 2d Dist. Montgomery No. 27738, 2018-Ohio-3068, ¶ 47 (citing cases). For that reason, self-defense and aggravated-assault instructions are incompatible in most cases. *Id.* Nevertheless, we recognized in *Brown* that the two theories conceivably might be compatible where a defendant is found to have exceeded the degree of force necessary to defend himself because he acted out of passion or rage.

{¶ 18} In the present case, however, nothing in Miller's testimony suggests that he acted in a sudden passion or fit of rage. He admitted that he was not agitated and not raising his voice before the stabbing. (Tr. Vol. IV at 644.) He was not upset and not "challenging" Young. (*Id.* at 673.) Miller claimed he moved backward when Young orally threatened him. (*Id.* at 644-647.) He only stabbed Young because he was afraid. (*Id.* at 646.) But "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998); *see also State v. McClendon*, 2d Dist. Montgomery No. 23558, 2010-

---

[3] In addition to addressing the merits of Miller's argument, the State contends the aggravated-assault instruction is a moot issue. It notes that two of the felonious-assault charges (deadly weapon and serious physical harm) related to the stabbing, served as underlying predicates to murder, and merged into murder for purposes of sentencing. The State also points out that Miller does not allege ineffective assistance based on his attorney's failure to seek an involuntary-manslaughter instruction predicated on the lesser offense of aggravated assault. As for the third felonious-assault charge, the State notes that it related to the victim being struck by a car, which was a separate incident falling outside of any serious provocation producing sudden passion or a fit of rage. For each of these reasons, the State contends we need not address defense counsel's failure to seek an aggravated-assault instruction. Because we find Miller's ineffective-assistance argument unpersuasive on its merits, we express no opinion on the mootness issue.

Ohio-4757, ¶ 23-24, *vacated in part on other grounds*, *State v. McClendon*, 128 Ohio St.3d 354, 2011-Ohio-954, 944 N.E.2d 235 (upholding the trial court's refusal to give an aggravated-assault instruction where the defendant shot the victim out of fear that the victim might be retrieving a weapon from a coat). Absent evidence that Miller acted under the influence of sudden passion or in a fit of rage caused by serious provocation, defense counsel did not provide ineffective assistance by failing to seek an aggravated-assault instruction.[4] The third assignment of error is overruled.

{¶ 19} In his fourth assignment of error, Miller contends prosecutorial misconduct deprived him of a fair trial. He cites three comments from the prosecutor. First, the prosecutor began opening statements with rhetorical questions to the jury about "how much money would justify stabbing your friend in the neck" and "proceeding to hit your friend with your car after that?" Second, the prosecutor asked Miller whether he usually drove while Young did the "dirty work" in dumpster diving. Third, the prosecutor noted during closing arguments that Miller had hit Young with a car after stabbing him. The prosecutor commented, "[t]hat's some friend."

{¶ 20} The test for prosecutorial misconduct is whether the prosecutor's comments

---

[4] The State also argues that Miller's attorney reasonably may have elected to purse an all-or-nothing strategy by arguing self-defense rather than seeking an aggravated-assault instruction. The State reasons that if Miller had been successful on his self-defense claim, he would have been acquitted rather than potentially convicted of aggravated assault. However, Miller is not arguing that his attorney should have pursued aggravated assault rather than self-defense. Miller appears to argue that this is the unusual case where the evidence potentially supported both theories. If this were true, we would see no strategic reason to foregoing pursuing an aggravated-assault instruction. In such a case, the jury would have the option to find sudden passion or a fit of rage and serious provocation and to convict Miller of aggravated assault rather than felonious assault if it rejected self-defense. We see no potential downside to Miller in such a scenario. Here, however, Miller's testimony does not support a finding that he acted out of sudden passion or in a fit of rage. Therefore, there simply was no basis for an aggravated-assault instruction.

were improper and, if so, whether they prejudicially affected Miller's substantial rights. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 61. "However, the touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. At trial, Miller did not object to any of the three instances about which he now complains. Therefore, we are limited to plain-error review.

{¶ 21} We see nothing improper about the prosecutor's rhetorical questions to begin opening statements. The State's theory of the case was that a money dispute between two friends, Miller and Young, had culminated in Miller's stabbing Young and hitting him with a car. The prosecutor's questions were a colorful way of setting the stage for the jury. Strictly speaking, of course, the legal issue was not whether the amount of money in dispute justified Miller's actions. Based on the entirety of the prosecutor's remarks, no juror would have thought so. The attention-grabbing opening lines of the prosecutor's statement should not be read in isolation to establish impropriety.

{¶ 22} The prosecutor's comment about Miller's driving and Young's doing the "dirty work" of entering dumpsters was factually correct. Miller appears to believe that the phrase "dirty work" was derogatory. But the fact is that Miller had a car and drove, while Young searched the dumpsters, which fairly may be characterized as the "dirty work." Regardless, any negative inference that may be drawn from the prosecutor's choice of words is too insignificant to have prejudiced Miller's right to a fair trial.

{¶ 23} Finally, Miller had testified that he and Young were friends and that he had stabbed Young purely in self-defense. In closing argument, the prosecutor noted that Miller had hit Young with a car after stabbing him. The challenged comment, "[t]hat's

some friend," appears to have been a response to Miller's claim that he would not have hurt his "friend" unless it was necessary for his own safety. Given the wide latitude given to counsel in closing arguments, we see nothing improper about the remark. We also do not believe the comment violated Miller's right to a fair trial. Plain error has not been established. The fourth assignment of error is overruled.

{¶ 24} In his fifth assignment of error, Miller contends his convictions were against the manifest weight of the evidence. With regard to the stabbing, he claims the evidence demonstrated that he was not at fault in creating the situation, that he had a bona fide belief that he was in danger of death or great bodily harm, and that he did not violate any duty to retreat or avoid the danger. Therefore, he claims self-defense applied. As for striking Young with a car, Miller cites his own testimony that he returned to the scene to find his missing knife and became distracted by a cigarette ember that caused him to swerve from the road and accidentally hit Young, who he did not even see.

{¶ 25} When a conviction is challenged as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 26} Miller's convictions were not against the weight of the evidence. Miller

admitted stabbing Young twice in the neck, and eyewitness Griffie testified that he saw Miller hit Young with the car. "In a situation involving death or great bodily harm, a defendant is not entitled to a finding of self-defense if (1) the defendant was at fault in creating the situation giving rise to the affray, (2) the defendant did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of such force, or (3) the defendant violated any duty to retreat or avoid the danger." *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, ¶ 38 (2d Dist.), *appeal accepted on other grounds*, 161 Ohio St.3d 1416, 2021-Ohio-120, 161 N.E.3d 711.

{¶ 27} Based on the evidence presented, the jury reasonably could have rejected Miller's self-defense claim. The record supported a finding that Miller was upset because Young had shoved him earlier in the day and that Miller confronted Young about a money dispute at Griffie's house. The evidence also supported a finding that Miller did not fear death or serious injury when he stabbed Young and that he could have left the scene and avoided any potential danger.

{¶ 28} Miller admitted that Young's knife remained pocketed when Miller stabbed him. Griffie was standing nearby and never heard Young make any threat to Miller. After the stabbing, Miller had no problem leaving the scene in his car before returning and hitting Young. Miller's claim that he was distracted and never saw Young defies credibility. The jury certainly could have rejected a theoretical possibility that Miller accidentally struck Young with a car just minutes after intentionally stabbing him twice. In addition, Miller's flight to Virginia was some evidence of consciousness of guilt. Miller's case is not an exceptional one in which the evidence weighed heavily against his convictions. The

fifth assignment of error is overruled.

### III. Conclusion

**{¶ 29}** Having overruled Miller's assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
David E. Stenson
Hon. Mary Katherine Huffman